*MADE JS-6*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | EDCV 11-1628-GW     Date   November 13, 2012 |
| Title | *In Re Lisa Gillian Young* |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):      FINAL RULING ON BANKRUPTCY APPEALS**


    Attached hereto is the Court's Final Ruling on Bankruptcy Appeals. The Court DENIES the consolidated appeal in its entirety and the decisions of the Bankruptcy Court are affirmed.

Initials of Preparer    JG

*In re Lisa Gillian Young*, Case Nos. CV-11-1626 and 11-1628
Final Ruling on Bankruptcy Appeals

## I. Background

This consolidated appeal arises out of two adversary actions that were filed in 2010 in the Bankruptcy Court of the Central District of California (the "Bankruptcy Court") by Plaintiff/ Appellant Gerry Gallagher ("Appellant" or "Gallagher") against then-Chapter 11 debtor[1], now Defendant/Appellant, Lisa Gillian Young ("Appellee" or "Young"). *See generally* Docket No. 8 (order granting motion to consolidate the two appeals).

The Bankruptcy Court held a consolidated trial on August 31, 2011, as to the two adversary actions. *See* ER at K:3-4.[2] At the trial, the parties stipulated to the following facts. The parties entered into a residential lease agreement (the "Lease") on October 5, 2008, where Young and non-party David Keys ("Keys") (a co-owner of the Property) were to be landlords and Appellant was to be a tenant[3]; the terms of the lease were to commence on December 10, 2008. ER at K:11-13. In addition to the Lease, the parties had executed two other agreements: (1) a purchase option agreement ("PO"), and (2) an inventory agreement. The PO was unrecorded and non-assignable; was dated November 5, 2008; and by its own terms terminated on December 9, 2015. ER at K:40-42. The inventory agreement concerned the condition of the Property and its contents. ER at K:52-53.[4]

The property in question was located at 24520 Dry Canyon Cold Creek Road, Calabasas, CA, 91302 (the "Property"), and Young had purchased the Property in 1995. ER at K:28. The Lease set the monthly rent at $12,000 for the first thirty-six months and higher thereafter, and required payment of a security deposit payment prior to the move-in date. ER at K:14-18. Appellant moved into the property on December 10, 2008. ER at K:38-39. Appellant made his last rental payment in July 2010, yet was still living in the Property at the time of the 2011 adversary trial in the Bankruptcy Court. ER at K:22-26, 33. Sometime in 2009 or 2010, Young defaulted on her mortgage on the Property. ER at K:36-38. On July 26, 2010, Young filed for bankruptcy. A trustee's sale of the Property took place on December 17, 2010, and a trustee's deed was recorded on December 28, 2010, indicating that the Property had sold for $1,275,000. ER at K-38-39.

---

[1]It is unclear whether Young's bankruptcy has now been discharged.

[2]Appellant prepared and lodged an excerpted record (*see* Docket No. 12), which shall be cited as ER at [tab letter]:[page number]. A full transcript of the consolidated trial in the bankruptcy court is found at tab K of the ER, and the judgment from which these appeals are taken are found at tab C.

[3]The Lease designates the tenant as Gerry Gallagher, Esperanze Peptide Ltd. *See* ER at B (Lease as Exhibit A to Appellee's cross-complaint).

[4]It does not appear that the Court has been provided with a copy of the purchase option agreement or the inventory agreement.

-1-

In one adversary action (the "Dischargeability Action"), Gallagher sought a determination in the Bankruptcy Court that a debt Young allegedly owed to Gallagher was nondischargeable under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a). ER at B. In essence, Gallagher claimed that *Young owed a debt to Gallagher* in the form of the rental payments she had received (as well as what Gallagher characterized as a $34,000 security deposit he had paid to Young). *Id.* Gallagher argued that he had paid Young the rent only because of Young's fraudulent representations concerning her ability and willingness to pay the mortgage on the Property. *Id.* Because Young allegedly obtained the rent payments through fraud, Gallagher cited provisions in the Bankruptcy Code that would purportedly render the "debt" nondischargeable, such that Young would still owe Gallagher the full amount of what he had paid to her, despite Young's bankruptcy filing. *Id. See generally* 11 U.S.C. § 523(a).

In the other adversary action (the "Declaratory Relief Action"), Gallagher alleged that "Defendants failed to pay mortgage payments since December, 2009 while at the same time collecting rent from Plaintiff." ER at B. Gallagher also alleged that Young had "threatened to commence eviction proceedings" against him. *Id.* He claimed that Young and her husband had made fraudulent statements concerning, *inter alia*, "their true intent with respect to use of rental money and honoring their obligation to [their mortgage] lender." *Id.* As such, in the Declaratory Relief Action, Gallagher sought a permanent injunction preventing Young from instituting eviction proceedings against him, declaratory relief as to the rights and obligations of the parties with respect to the Property, an accounting "of rental funds used" and damages. *Id.*

Young then filed a "cross-complaint" for unlawful detainer, alleging that Gallagher had failed to pay rent since July 2010, though had continued to live at the Property through the time of the 2011 trial in the Bankruptcy Court. *Id.* Young thus sought possession of the Property, rent past due and damages. *Id.*

The Bankruptcy Court held a trial, complete with witness testimony and documentary evidence in the form of the relevant agreements[5], and found in Young's favor as to all claims, entering two written judgments but no written opinion. *See* ER at C. Gallagher now appeals the Bankruptcy Court's judgment in both the Declaratory Relief Action and the Dischargeability Action. He identifies eight issues that he purportedly raises in this consolidated appeal.[6]

---

[5]The excerpted record does not contain the exhibits presented to the Bankruptcy Court at trial. However, the lease agreement is attached to Young's cross-complaint from the Bankruptcy Court, found at tab B of the ER.

[6] These eight issues are:
> 1. Whether the Bankruptcy Court erred in not awarding damages to Appellant based upon Debtors' false representations regarding Plaintiff's investment in the subject property;
> 2. Whether the Bankruptcy Court abused its discretion and/or erred in not finding fraud in the conduct of Defendants toward Appellant;
> 3. Whether Debtor was entitled to claim rent and/or damages since Debtor failed to move for approval of use of cash collateral;
> 4. Whether the Bankruptcy Court abused its discretion and/or erred in failing to find the claims by Plaintiff against the Debtor Defendant nondischargeable under 11 §§ [sic] U.S.C. 523(A)(2),(4) and (6);
> 5. Whether the Bankruptcy Court abused its discretion in dismissing, sua sponte, the Second Claim for Relief under 11 U.S.C. 523(A)(4) prior to a trial on the merits;

However, as noted by Appellee, Appellant does actually organize his brief according to these enumerated issues, nor does he provide argument as to all of them. Thus, the Court will analyze the bankruptcy appeal based not on this list of issues but instead as substantively presented by Appellant.

~~Appellee failed to timely oppose this appeal.~~ The Court, *sua sponte,* provided an extension of time for such opposition, rather than deeming the non-opposition consent to the grant of the appeal. Docket No. 11. The opposition that Appellee belatedly filed (Docket No. 13) does not address the issues or arguments raised in Appellant's opening brief other than to conclusorily state that they are false, to unfairly malign Appellant's brief as "nonsensical" (Docket No. 13 at 2) and to allege that Appellant had provided *no* evidence at trial to support his claims (*id.* at 8). As is clear from the Court's discussion *infra,* that that characterization over-states the deficiencies. Appellee also puzzlingly announces that she has "intentionally not provided an abundance of case law" (Docket No. 13 at 3) in opposing the appeal, and then states that "[n]either the court nor the Appellee should be subjected having to read [*sic*] the entire record guessing what Appellant is even talking about or referring to in his brief." Docket No. 13 at 5. While the Court ultimately finds in Appellee's favor as to the merits of this appeal, the Court notes that Appellee's opposition brief provided so little substance that the Court was, in fact, forced to peruse the entire record so as to address the arguments raised by the parties, and is dismayed by Appellee's frank refusal to properly review the record or caselaw relevant to this appeal. Nonetheless, the Court DENIES this appeal in its entirety, for the reasons set forth *infra.*

## II. Legal Standard

This court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. *See Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.),* 66 F.3d 1091, 1094 (9th Cir. 1995). A bankruptcy court's findings of fact are accepted unless the reviewing court has a "definite and firm conviction that a mistake has been committed. Mixed questions of law and fact are reviewed de novo." *In re JTS Corp.,* 617 F.3d 1102, 1109 (9th Cir. 2010) (internal citations omitted). A ruling from the bankruptcy court dismissing an adversary complaint for failure to state a claim is a ruling on a question of law. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir. 1988).

## III. Analysis

### A. The Bankruptcy Court Did Not Err in Ruling in Young's Favor in the

---

6. Whether Debtor Young's collection of rent from Plaintiff while not paying her mortgage gave rise to fraud and misappropriation rendering her debt nondischargeable under 11 §§ [sic] U.S.C. 523(A)(2),(4), and (6);

7. Whether the Debtor should have been liable to Plaintiff for damages arising from the fraud and misrepresentations based upon the foreclosure action;

8. Whether the Court abused its discretion and/or erred in refusing to grant Plaintiff declaratory relief based upon Debtors' false representations regarding Plaintiff's investment in the subject property.

Docket No. 9 at 2-3; ER at D.

*Dischargeability Action.*

    1. <u>The Bankruptcy Court Did Not Err in Ruling that 11 U.S.C. § 523(a)(2) Did Not Render the Alleged Debt Nondischargeable.</u>

11 U.S.C. § 523 carves out exceptions to the general rule that debts may be discharged in bankruptcy. In particular, debts "for money, property, services, or an extension, renewal, or refinancing of credit" are nondischargeable if obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).[7] A creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A). *See Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *FIA Card Servs., N.A. v. Smith*, No. 11-CV-04539-LHK, 2012 U.S. Dist. LEXIS 119972, at * 7-8 (N.D. Cal. Aug. 22, 2012) (Koh, J.). The five elements are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996). "A creditor [seeking a finding of non-dischargeability] must prove actual fraud by a preponderance of the evidence." *In re Ettell*, 188 F.3d 1141, 1144 (9th Cir. 1999) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). The bankruptcy court's findings as to intent, reliance, proximate cause are findings of fact that are reviewed under the stringent "clearly erroneous" standard. *In re Lansford*, 822 F.2d 902, 904 (9th Cir. 1987) ("Whether the misrepresentations were material under the circumstances, whether there was reasonable reliance, and whether there was intent to deceive are issues of fact.").

Here, the Bankruptcy Court's findings of fact were made after a full adversary trial; this Court must give "great deference" to them. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) ("When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because [it] . . . had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'") (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)). Clearly, then, Gallagher faces a high bar in the form of the standard of review this Court must employ, as to overturn the Bankruptcy Court's judgment as to dischargeability would require a holding that the Bankruptcy Court, which held a full adversary trial complete with witness testimony, made findings of fact that were clearly erroneous.

Gallagher's theory of the case was that Young accepted rental payments from Gallagher without disclosing that she was not applying those payments to the mortgage payments she, in turn, owed to her mortgage lenders. This, Gallagher argued, was a fraudulent omission because Young caused the default on her mortgage without providing Gallagher the chance to purchase the property, all while reassuring Gallagher that her bankruptcy petition would not hinder his ability to live at the Property. *See* Docket No. 9 at 13.

At trial, the following facts were developed when then-Plaintiff Gallagher presented his

---

[7]"The purposes of th[is] provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." *In re Slyman*, 234 F.3d 1081, 1987 (9th Cir. 2000) (citation omitted).

case. As to the security deposit issue, Gallagher testified that he paid Young and Keys a total of $34,000 at the time the lease was signed in October 2008, which broke down to first month's and last month's rent (at $12,000 per month), and then a $10,000 "good faith deposit." ER at K:88. Gallagher testified that he made both repairs and improvements to the property which cost at least $200,000, including installing a new soundsystem and plumbing work. ER at K:76-79. At the hearing held before this Court on October 25, 2012, Gallagher repsented that these sums were expended both before and after the alleged fraudulent statements or omissions were made. In the Bankruptcy Court, Gallagher testified that he worked in the music industry and wanted the house to be in good condition because "I would have celebrity guests and friends" coming to visit; he viewed the Property as a "show case home." ER at K:78-79. Gallagher testified that in June 2010[8], he stopped making rental payments, and when asked what his purpose was in ceasing to pay his rent, he testified, "I was very concerned with what was going on [as to the bankruptcy and mortgage]. . . I was getting no answers." ER at K:87. He admitted he stopped paying rent *before* he knew the property was going into default. ER at K:108. He also admitted that there is no "correspondence of any kind" indicating that his basis for withholding the rent was a concern about foreclosure or bankruptcy. ER at K:109.

Gallagher testified that he was out of the country from February through August of 2010. ER at K:107. Gallagher also testified that according to his girlfriend Victoria Lynne Allen ("Allen"), who was living at the Property[9], the co-owner of the Property (*i.e.*, Keys) (*see* ER at K:86, 117), visited the Property in July 2010 with appraisers because he "wanted to renegotiate his loans," and that Keys told Allen then that Keys and Young were going to "try to make the loans to [Gallagher's] benefit." ER at K:80. Allen corroborated this testimony, and noted that Young was also present during the July 2010 visit to the Property. ER at K:126. Gallagher testified that Young and Keys reassured him via email that his tenancy would not be affected by the bankruptcy and that the mortgage would be renegotiated. ER at K:80-81, 107.

Generally, Gallagher noted that "from day one" he had dealt almost exclusively with Keys, not Young. ER at K:86-87. The Bankruptcy Court found this a crucial issue, eliciting testimony from Gallagher that he had "no discussions" with Young at the time he entered the lease, no discussions with Young regarding the purchase option, and that generally Young made "no representations to [Gallagher] with respect to the mortgage payments" - Gallagher dealt only with Keys concerning these issues. ER at K:110-111. Gallagher then testified that Keys held himself out as acting on behalf of Young, because they were "joint owners of the property and . . . were married."[10] ER at K:121.

Young testified that she collected rent from Gallagher and did not apply it to the mortgage for some period of time. ER at K:141-45. She also testified that she did not disclose to Gallagher her failure to make mortgage payments. ER at K:144. She testified that she used the

---

[8]However, Gallagher also later testified - upon looking at a receipt - that he had made a payment in July 2010. ER at K:113.

[9]*See* ER at K:123 (Allen testifying she is Gallagher's girlfriend and she lived at the Property).

[10]It appears that Gallagher was under a misapprehension that Young and Keys were married; they are not. *See* ER at K:119.

rent payments to pay property taxes and property insurance, and that a small amount of the rent payments had remained in her bank account at the time she filed for bankruptcy. ER at K:146-47.

Gallagher rested his case after taking the stand and calling Allen and Young as witnesses.[11] After evoking both Fed. R. Civ. P 41(b) and Fed. R. Civ. P 52(c)[12], the Bankruptcy Court permitted both parties to present argument as to whether Gallagher had failed to present a prime facie case for nondischargeability under either 11 U.S.C. § 523(a)(2) or § 523(a)(6). After hearing from both sides, the Bankruptcy Court made a detailed oral ruling as to why Gallagher had failed to make a prima facie case as to either the § 523(a)(2) or § 523(a)(6) claim. ER at K:157-163. As to the claim under § 523(a)(2), the Bankruptcy Court found that Gallagher had not established that Young had made any misrepresentations to him with the intent to deceive him, given that Young had essentially no communications with Gallagher.[13] As to reliance, Gallagher had testified that he made improvements to the Property in reliance upon the reassurances that the foreclosure would not affect his right to possess or option to buy the Property. ER at K:77-79. However, the Bankruptcy Court found that those improvements were made so that Gallagher could impress the celebrity guests he testified he frequently invited to the property, "not in reliance on anything." ER at K:159.

It is clear that the Bankruptcy Court carefully considered the witness testimony given at the trial. Importantly, Appellant does not present any persuasive argument that the Bankruptcy Court was clearly erroneous in finding that Young lacked the intent to defraud Gallagher.[14]

---

[11]Many issues were raised during the trial that are not touched upon here, as they do not bear upon this Court's analysis on appeal, including the dispute over the ownership and condition of the furniture in the Property, how many lots the Property comprised and the parties' statements as to that matter (*see* ER at K:135), details as to what lenders held mortgages on the Property (*see* ER at K:139), and those lenders' alleged cash collateral interest in the rent (*see* Docket No. 15 at 2). If either party contends these matters are relevant to the appeal, that party should raise the matter at the hearing.

[12]It seems unclear precisely which procedural mechanism the Bankruptcy Court employed in issuing its ruling, which was rendered in Young's favor at the conclusion of then-Plaintiff Gallagher's case. *See* ER at K:162 ("the Court will grant the motion, and for lack of a better term, judgment on the pleadings but in this case it would be judgment following presentation of the Plaintiff's prima facie case and we simply find Plaintiff has not made a prima facie case with respect to either [§ 523(a)(2) or § 523(a)(6)].").

[13]The Bankruptcy Court had previously rejected Gallagher's attempts during the trial to hold Young responsible for Keys' actions according to agency principles, stating, "you can't use agency to try to determine whether someone else was involved with non-dischargeability, with a fraud – especially a fraud. You just can't do it. You could have sued Mr. Keys for nondischargeability as a non-debtor if he's married to a spouse who is a debtor, but you didn't do that" (and as it turned out, Keys was not Young's husband after all). ER at K:115. Appellant does not challenge that conclusion of law, as he reiterates in his reply that "*the Debtor's* silence as to the true application of the rent and assurances that the property was unencumbered and misleading and therefore actionable under section 523(a)(2)(A)." Docket No. 15 at 7 (emphasis added).

[14]Appellant does argue that the Bankruptcy Court erred in requiring affirmative proof of reliance, because his fraud theory rested on non-disclosure, not an affirmative misrepresentation. Docket No. 9 at 14-16. The Court need not determine whether Appellant is correct on that point of law, however, because he has not persuaded this Court that the Bankruptcy Court erred in finding no intent to deceive, and thus has not persuaded the Court that the

Appellant merely recites some of the testimony summarized above, without indicating why this Court should not defer to the Bankruptcy Court's finding, after hearing live testimony from both parties, that Young had no intent to deceive Gallagher as to her ability to renegotiate her mortgages to avoid foreclosure, and no intent to deceive Gallagher as to the effect of her bankruptcy petition on his ability to live in or purchase the Property. *See* Docket No. 9 at 12-13. Given that the Bankruptcy Court was not clearly erroneous in finding that Gallagher had not met his burden of showing, by preponderance of the evidence, all the elements of fraud required to support a nondischargeability claim under § 523(a)(2), the Court DENIES the appeal with regards to the § 523(a)(2) claim.

### 2. The Bankruptcy Court Did Not Err in Ruling that 11 U.S.C. § 523(a)(6) Did Not Render the Alleged Debt Nondischargeable

Debts for "willful *and* malicious injury by the debtor to another entity or to the property of another entity" are also non-dischargeable. 11 U.S.C. § 523(a)(6) (emphasis added). A "willful" injury is a "deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original); *In re Hom*, No. CV11–01260 AHM, 2012 U.S. Dist. LEXIS 96980, at *3 (C.D. Cal. July 11, 2012). A "malicious" injury requires "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Su*, 290 F.3d 1140, 1147 (9th Cir. 2002) (internal citations omitted).

As to this claim, the Bankruptcy Court again ruled that Gallagher had failed to make a prima facie case that all of the required elements were met. ER at K:159-163. The Court noted that "[a]n intentional breach of contract cannot support dischargeability objections under 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law." ER at K:160 (citing *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) ("Something more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6), and [*In re Jercich*, 238 F.3d 1202 (9th Cir. 2001)] defined that 'something more' as tortious conduct.")). Further, the Bankruptcy Court addressed in detail why the conduct alleged by Gallagher could not constitute the tort of rent skimming. ER at K:160-162. In this appeal, Gallagher does not challenge those conclusions of law. Instead, his argument as to why the Bankruptcy Court erred in denying his § 523(a)(6) claim appears to be entirely derivative of and dependent on his argument as to the § 523(a)(2) claim with regards to fraud: "because Debtor committed fraud by non-disclosure, an intentional, tortious act that undeniably harms Gallagher renders the debt non-dischargeable under 523(a)(6)." Docket No. 9 at 16. Given that this Court has found that the Bankruptcy Court did not err in finding that Gallagher had *not* made a prima facie case as to all the elements of fraud, this argument fails on its face.

In sum, then, Gallagher has not identified any error of law or clearly erroneous factual finding with regards to the Bankruptcy Court's ruling on the § 523(a)(6) claim, and the Court DENIES Gallagher's appeal in that regard.

---

Bankruptcy Court erred in finding that Plaintiff had failed to make a prima facie case as to *all* the requisite elements needed to support a § 523(a)(2) claim.

### 3. The Bankruptcy Court Did Not Err in Ruling that 11 U.S.C. § 523(a)(4) Did Not Render the Alleged Debt Nondischargeable

Also nondischargeable under the Bankruptcy Code are debts for "fraud or defalcation while acting in a *fiduciary capacity*, embezzlement, or larceny" (11 U.S.C. § 523(a)(4))(emphasis added). With regards to this claim, the Bankruptcy Court held simply: "(a)(4) is off the table. I mean nobody could have established that and I dismissed that case." ER at K:154-55. Gallagher argues that this was a *sua sponte* dismissal of the § 523(a)(4) claim, and that no written findings were made as to the dismissal, citing caselaw indicating that such a dismissal must be overturned because it does not give the plaintiff a chance to respond. Docket No. 9 at 17-18 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001)). Appellant then proceeds to argue that he might have been able to show that Young was acting as a fiduciary to Gallagher given that there was allegedly "relationship of trust of confidence [*sic*] between the parties." Docket No. 9 at 18. While ideally the parties would have addressed, specifically and on the record in the Bankruptcy Court, whether Young and Gallagher could possibly be deemed to have shared a fiduciary relationship (no allegations of embezzlement or larceny are present in this case), the Court notes that the Bankruptcy Court asked Gallagher's counsel, Mr. Negrete, just moments after making the statement that the § 523(a)(4) claim was "off the table": "With respect to . . . do you have something else?" ER at K:155. Mr. Negrete answered that he did have something else to add, but did not address then, or at any other point during the trial, the § 523(a)(4) issue. Given that he did not attempt to defend this claim at the trial even after being told in no uncertain terms that the Bankruptcy Court was going to dismiss the claim, he can hardly complain on appeal that he had no chance to do so and thus the dismissal should be overturned.[15] For these reasons, the Court finds that the Bankruptcy Court did not err in dismissing the § 523(a)(4) claim, given that Gallagher presented no evidence or argument as to why he could meet the prima facie elements of that provision during the adversary trial in the Bankruptcy Court.

### B. The Bankruptcy Court Did Not Err in Ruling in Young's Favor in the Declaratory Relief Action

In the Declaratory Relief Action, Gallagher sought a determination of the rights and obligations of the parties with respect to the Lease and Young's bankruptcy. ER at B, K:163-64. The Bankruptcy Court had already made a finding that then-Debtor Young had "rejected" the Lease pursuant to 11 U.S.C. § 365, due to the fact that the property had been foreclosed. ER at K:46. "[R]ejection of an executory contract serves two purposes. It relieves the debtor of burdensome future obligations while he is trying to recover financially and it constitutes a breach of a contract which permits the other party to file a creditor's claim." *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) (citations omitted); *In re Ortiz*, 400 B.R. 755, 764 (C.D. Cal. 2009). The Court noted that by deeming the Lease rejected, Gallagher had "won" in that he had been awarded declaratory relief as to the rejection of the Lease, which meant he could file a creditor's claim for the damages he allegedly suffered due to the breach of the Lease, including

---

[15]Moreover, the Court has perused in depth the trial transcript from Bankruptcy Court, and finds that far from attempting to establish any fiduciary relationship between Young and Gallagher, Gallagher testified that he barely ever spoke to Young during the entire period in question. ER at K:110-11.

the $34,000 security deposit. ER at K:170-72. The Bankruptcy Court, though, declined to award any other declaratory relief, such as a determination of whether there should be any "set off" to Young's counterclaims to rent, or a general declaration of the rights and duties of the parties as to the Lease. The Court told Gallagher that it was denying his declaratory relief claim because "you simply don't have enough evidence that you provided." ER at K:169-70.

Appellant argues that the Bankruptcy Court "abused its discretion in declining to offer declaratory relief without stating reasons on the record as to why it refused to make the requested determination of rights and obligations of the parties." Docket No. 9 at 20. Appellant, though, recognizes that the court's determination of whether declaratory relief is warranted "is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (Reed, J., concurring)); 28 U.S.C. § 2201(a). Appellant argues that the Bankruptcy Court nonetheless abused its discretion in denying declaratory relief because the Court did not address in detail why declaratory relief was not warranted, other than to note generally that Plaintiff had not presented sufficient evidence.

In response to the Bankruptcy Court's oral ruling as to this claim, Gallagher answered that he had in fact provided evidence of damages, such as the costs of the repairs and improvements made to the Property, and the unreturned security deposit. ER at K:171. However, the Bankruptcy Court noted that as to those damages, Gallagher was free to file a creditor claim in the bankruptcy. Gallagher did not point out any other evidence to the Bankruptcy Court that could have supported his declaratory relief claim. Moreover, the Bankruptcy Court repeatedly asked Gallagher what specific declaratory relief he was seeking, given that the Property had been foreclosed after the Declaratory Relief Action complaint had been filed, and given the Court's prior ruling in Young's favor as to the non-dischargeability. *See* ER at K:168. The only clear answer offered by Gallagher was that he wanted the Court to determine whether any of the rent payments received by Young had been improperly used; the Court had already noted, though, that no declaratory relief was necessary as to that point because as a creditor in the bankruptcy he could request an examination to determine the status of the rent monies pursuant to Fed. R. Bank. P. 2004.[16] *See* ER at K:168. Gallagher did not identify for the Bankruptcy Court any other evidence that would support a claim for declaratory relief as to the rights and obligations of the parties concerning the Lease.

While the Bankruptcy Court's basis for denying declaratory relief is not entirely clear, the Court nonetheless DENIES the appeal as to the Bankruptcy Court's judgment in Young's favor as to the Declaratory Relief Action, given the discretion that a court possesses in deciding when declaratory relief is warranted and the Bankruptcy Court's clarification that Gallagher had the right, as to the Lease which it had deemed rejected, to file a claim for his alleged damages, as a creditor in the bankruptcy.

---

[16]As stated in *Smith v. Metropolitan Property & Ins. Co.*, 629 F.2d 757, 759 (8th Cir. 1980), "[a]lthough the availability of alternative remedies is not a bar to declaratory relief, Fed. R. Civ. P. 57, the district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate."

## IV.  Conclusion

     The Court DENIES this consolidated appeal in its entirety and the decisions of the Bankruptcy Court are affirmed.